UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DAVID LOZADA, JONATHAN ARELLANO, )
CYNTHIA CARRASCO, CARLY CHAMBERS, )
ROGELIO CORRAL, DOUGLAS DeRHODES, )
JOSHUA GOLDBERG, LEX LEAKS, TONY )
LONG, ERIC PERINO, GERSON PINEDO, )
KEVIN STEPP, CORINTHIAUS TIBBS, )
JERRY CHICK, AND MICHAEL VAUGHN )
)
    Plaintiffs,    )  No. 10 C 1019
)
 v.    )
)
CITY OF CHICAGO and CHICAGO POLICE )
OFFICER R. FIORITO, Star #11624    )
)
    Defendants.    )

## MEMORANDUM OPINION AND ORDER

MARVIN E. ASPEN, District Judge:

  Plaintiffs filed an eight-count complaint against Defendants City of Chicago (the "City") and Chicago Police Officer R. Fiorito ("Fiorito"), alleging civil rights violations under 42 U.S.C. § 1983. Count I alleges a pattern of racketeering activity, brought pursuant to 18 U.S.C. §§ 1962(b), ©, and (d); Count II alleges a *Monell* claim; Count III alleges indemnity under Illinois state law; Count IV alleges false arrest; Count V alleges denial of equal protection of the laws, in violation of the Fourteenth Amendment of the Constitution of the United States; Count VII alleges malicious prosecution[1]; Count VIII alleges intentional infliction of emotional distress; Count X alleges false imprisonment[2]; and Count XI alleges civil conspiracy.

---

[1] Plaintiffs misnumbered the counts in their Complaint, omitting Count VI. (Compl. ¶¶ 73–74.) For purposes of clarity, we also omit Count VI.

[2] Plaintiffs again misnumbered the counts in their Complaint, omitting Count IX. (Compl. ¶¶ 83–84.) For purposes of clarity, we also omit Count IX.

Defendants filed the present two motions and, generally speaking, they ask that we sever allegedly misjoined parties from the case or, in the alternative, order separate trials on Plaintiffs' claims pursuant to Rule 42(b). For the reasons stated below, we grant Defendants' motions in part.

## BACKGROUND

For purposes of this motion, we accept the following allegations in the Complaint as true. Fiorito arrested and charged each Plaintiff with Driving Under the Influence ("DUI") in fifteen separate incidents from August 2006 through August 2009. (Compl. ¶ 40.) None of the Plaintiffs were arrested in 2007. (*Id.*) In each case, Plaintiffs allege that Fiorito lacked probable cause to arrest and charge them with DUIs. (*Id.* ¶ 11.) Plaintiffs claim that, in making the false arrests, Fiorito failed to comply with proper procedures in his administration of the Standardized Field Performance Tests, falsified testimony and police reports to indicate that he had administered the field tests in compliance with proper procedures, falsified testimony and police reports to indicate that Plaintiffs had failed sobriety tests, uniformly prevented Plaintiffs from taking blood or breathalyzer tests or falsified reports that they had refused such tests, and purposefully used identical language in court and in police reports to describe Plaintiffs' drunken behavior at the time of their arrests. (*Id.* ¶¶ 12–17.)

Plaintiffs claim that their false arrests constituted part of Fiorito's "continuing course of conduct, in part motivated by both pecuniary gain and anti-gay animus." (*Id.* ¶ 6.) Plaintiffs allege that Fiorito, as a midnight shift officer who resisted changes in his shift, was guaranteed overtime pay when he appeared in court while not on shift. (*Id.* ¶ 29.) Court appearances never occurred during the midnight shift and Fiorito allegedly made an overwhelming number of

arrests, resulting in regular appearances in court, allowing him to personally profit from his abuse of the overtime system. (*Id.* ¶¶ 29, 31.) Plaintiffs also allege, as part of Fiorito's continuing course of conduct, that he falsely arrested and routinely used derogatory language towards unimpaired drivers near lesbian and gay bars in "boystown," demonstrating his anti-gay animus. (*Id.* ¶¶ 23, 26.)

Plaintiffs further allege that Fiorito's continuing course of conduct "constitute[d] a pattern and practice" that the City both implicitly and explicitly condoned, creating opportunities for Fiorito and other officers to abuse the overtime system. (*Id.* ¶¶ 26–31.) This alleged pattern and practice included: instituting a policy allowing officers to receive overtime pay for appearances in court when not on shift; failing to place limits on overtime pay; allowing traffic officers to appear in court without being subpoenaed or receiving notification to be there; and failing to limit officers' court appearances to their designated "key dates." (*Id.* ¶¶ 30–39.) With respect to Fiorito's conduct, Plaintiffs contend that the City acquiesced in Fiorito's resistance to using video cameras in his squad car, failed to provide any mechanism to prevent abuse of the overtime system or to identify officers making false arrests, and failed to properly investigate the accusation by other officers that Fiorito was abusing the overtime system. (*Id.*)

## ANALYSIS

Under Federal Rule of Civil Procedure 21, a court may not dismiss an action for misjoinder, but may sever a misjoined claim or party at any time during a lawsuit. Fed. R. Civ. P. 21; *see Wilson v. Peslak*, No. 04 C 2345, 2005 WL 1227316, at *1–2 (N.D. Ill. May 12, 2005). Although Rule 21 does not set forth a standard for proper joinder, courts have applied the permissive joinder requirements of Rule 20(a). *Wilson*, 2005 WL 1227316, at *2; *see Bailey v.*

*N. Trust Co.*, 196 F.R.D. 513, 515 (N.D. Ill. 2000). The purpose of Rule 20 is "to enable economies in litigation" by "promot[ing] trial convenience and expedit[ing] the final determination of disputes, thereby preventing multiple lawsuits." *Gorence v. Eagle Food Ctrs., Inc.*, No. 93 C 4862, 1996 WL 734955, at *3 (N.D. Ill. Dec. 19, 1996); *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000). District courts interpret Rule 20 liberally to achieve its purpose and exercise "wide discretion" in deciding whether to sever a party. *Gorence*, 1996 WL 734955, at *3; *Chavez v. Ill. State Police*, 251 F.3d 612, 632 (7th Cir. 2001). Under Rule 20(a), parties are properly joined where: (I) they assert claims "arising out of the same transaction, occurrence, or series of transactions or occurrences" and (ii) the claims raise "[a]ny question of law or fact common to all plaintiffs." Fed. R. Civ. P. 20(a); *see Bailey*, 196 F.R.D. at 515.

The primary issue before us is whether Plaintiffs' claims "aris[e] out of the same transaction [or] occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a). In determining whether a specific factual situation meets the transaction or occurrence requirements of Rule 20(a), courts apply "a case by case approach." *Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333 (8th Cir. 1974); *Gorence*, 1996 WL 734955, at *3 (citing *Mosley* with approval); *Bailey*, 196 F.R.D. at 515 (same); *Nelson v. Chertoff*, No. 07 C 2991, 2008 WL 4211577, at *6 (N.D. Ill. Sept. 10, 2008) (same). Although "transaction or occurrence" is not defined in Rule 20(a), courts interpret this term as "comprehend[ing] a series of many occurrences, depending not so much upon the immediateness of their connection as upon their logical relationship." *Mosley,* 497 F.2d at 1333; *see Bloomquist v. ZLB Behring, LLC*, No. 06 C 6738, 2007 WL 2903181, at *1 (N.D. Ill. Sept. 28, 2007). Courts determine the logical relatedness of separate occurrences by considering a variety of factors, including: "whether the alleged conduct

occurred during the same general time period, involved the same people and similar conduct, and implicated a 'system of decision-making' or 'widely-held policy of discrimination.'" *Wilson*, 2005 WL 1227316, at *2 (quoting *Hawkins v. Groot Indus. Inc.*, 210 F.R.D. 226, 229 (N.D. Ill. 2002)); *Martinez v. Haleas*, No. 07 C 6112, 2010 WL 1337555, at * 3 (N.D. Ill. Mar. 30, 2010).

The Northern District of Illinois has come out on both sides of this issue. In support of their motions to sever, Defendants point to *Martinez v. Haleas*, which involved a strikingly similar factual situation alleging false arrest against defendants Chicago Police Officer Haleas and the City. 2010 WL 1337555, at *1. (City's Mot. ¶¶ 9–10, 14; Fiorito's Mot. at 4–5.) There, the court held that plaintiffs' claims did not constitute the same transaction or occurrence, or series of transactions or occurrences, since each claim would require individual discovery and fact finding, different testimony and witnesses, and separate questions for Haleas to answer. *Martinez*, 2010 WL 1337555, at *3–4. With regard to the *Monell* claim, *Martinez* recognized the potential existence of common questions pertaining to the City's policies encouraging Haleas's misconduct. *Id.* at *3. However, the court, preferring a coordinated pretrial proceeding to joinder, granted defendants' motions to dismiss for misjoinder. *Id.*

In response to Defendants' motions to sever, Plaintiffs point to *Dean v. City of Chicago*, where eighteen plaintiffs filed suit against the same defendants as in the present case, alleging factually indistinguishable claims of false arrest against both the City and Officer Fiorito. No. 09 C 1190, 2009 WL 2848865, at *2 (N.D. Ill. Aug. 31, 2009). (Resp. at 2–3.) The court held that, although plaintiffs' claims did not constitute the same transaction or occurrence, they were still part of a series of transactions or occurrences for purposes of Rule 20(a). *Dean*, 2009 WL 2848865, at *2. In *Dean*, like in our case, plaintiffs' arrests were linked by several factors: each

incident involved defendant Fiorito, the same arresting officer; each involved allegations of a common course of conduct by Fiorito to abuse the overtime system for personal gain; and each alleged a pattern and practice by defendant the City that encouraged Fiorito's improper practices. *Id*. at *3. Although the arrests occurred two years apart, the court found that joinder of the plaintiffs' claims would "not delay the adjudication of the original plaintiffs' claims or those of any other plaintiff[,]" making joinder appropriate under Rule 20(a). *Id*. at *2.

While the approaches taken in *Martinez* and *Dean* both have their appeal, we find the analysis in *Martinez* to be more persuasive. Although Plaintiffs' arrests contained some alleged similarities, each arrest was a distinct occurrence on a specific date, at a particular location, and under unique circumstances. Many of Plaintiffs' claims such as false arrest and malicious prosecution are therefore entirely distinct from Plaintiff to Plaintiff. Although Plaintiffs' *Monell* claims create an alleged link between the arrests, even those claims depend on the unique facts of each Plaintiff's arrest because we must determine from those facts whether each Plaintiff's arrest fell within the alleged pattern and practice. Under these circumstances, we cannot say that Plaintiffs' arrests were part of the same series of transactions or occurrences. Accordingly, Plaintiffs' claims should heard as separate actions.

## CONCLUSION

For the reasons stated above, Defendants' motions to sever are granted. Plaintiffs Arrellano, Carrasco, Chambers, Corral, DeRhodes, Goldberg, Leaks, Long, Perino, Pinedo, Stepp, Tibbs, Chick, and Vaughn are dismissed from this action without prejudice as misjoined

and are given leave to refile their claims as separate actions. Defendants' motion for separate trials is denied as moot. It is so ordered.

_____
Honorable Marvin E. Aspen
U.S. District Court Judge

Date: August 30, 2010